UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MITCHELL STEPHENS, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>BUTCHERBOX OPCO LLC,<br>Defendant. | Case No. 3:26-cv-05482-TMC<br>ORDER REMANDING CASE |

## I. INTRODUCTION AND BACKGROUND

This case is a proposed class action against Defendant ButcherBox OpCo LLC ("ButcherBox") for allegedly sending false and misleading emails in violation of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190, and Washington's Consumer Protection Act ("CPA"), RCW 19.86. *See* Dkt. 23. Plaintiff Mitchell Stephens alleges that ButcherBox has sent him and other Washington consumers a large volume of commercial emails with "deceptive subject lines." *Id.* ¶¶ 1–3. He describes a marketing scheme whereby ButcherBox sends emails announcing misleading offers and time-limited promotions that are later extended. *Id.* ¶¶ 15–35. He specifically points to several emails he received between February and April 2026, each of which he claims included false or misleading information in

the subject line or body of the message. *Id.* ¶¶ 17, 19, 22–23, 25–34. He seeks damages and injunctive relief for ButcherBox's alleged CEMA and CPA violations. *Id.* ¶¶ 70–71, 80–81.

On March 19, 2026, Stephens filed a putative class complaint against ButcherBox in Pierce County Superior Court. Dkt. 1-1 at 13–27. On May 7, ButcherBox removed the case to federal court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"). Dkt. 1. On June 5, Stephens filed an amended complaint (Dkt. 15), which ButcherBox moved to dismiss (Dkt. 16). But on July 27, Stephens filed a second amended complaint, which mooted the pending dismissal motion. Dkts. 21–23. After reviewing the complaint, the Court determined that "it is not apparent that Stephens has alleged an Article III as opposed to merely a statutory injury" and ordered ButcherBox to show cause why this case should not be remanded to Pierce County Superior Court for lack of standing. Dkt. 26 at 4. ButcherBox then moved to stay deadlines for briefing on any motion to dismiss the second amended complaint (Dkt. 27), and on September 18, the Court granted the requested stay (Dkt. 30). On September 23, ButcherBox responded to the show cause order. Dkt. 31.

The Court concludes that Stephens lacks Article III standing and REMANDS this case to Pierce County Superior Court.

## II. LEGAL STANDARD

Both the Supreme Court and the Ninth Circuit "have held that whether or not the parties raise the issue, federal courts are required sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (internal quotation marks, alteration, and emphasis omitted) (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)). Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Although there is "no antiremoval presumption" for cases removed pursuant to

CAFA, the removing party must put forth evidence establishing jurisdiction if "the court questions[ ] the defendant's allegation[s]." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

Moreover, as the party invoking federal jurisdiction, ButcherBox bears the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (second alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. at 340–41). "[A] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. at 341). Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## III. DISCUSSION

ButcherBox argues that the allegations in Stephens's original complaint are sufficient to establish standing under Article III. Dkt. 31 at 7–10. In the alternative, it asks the Court to stay

this case pending the Ninth Circuit's resolution of *Montes v. Penney OpCo, LLC*, No. 26-241, which concerns a similar legal question. *Id.* at 11–13; *see Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *2 (E.D. Wash. Dec. 4, 2025) (concluding that the receipt of emails allegedly in violation of CEMA and the CPA is not an injury-in-fact for the purposes of Article III standing). The Court addresses each of these arguments in turn.

**A. The Court determines its jurisdiction based on the allegations in the second amended complaint.**

As an initial matter, ButcherBox argues that the Court should determine Stephens's standing based on the allegations in his original complaint, which was in effect at the time of removal, rather than the second amended complaint. Dkt. 31 at 7. It cites *Williams v. Costco Wholesale Corp.* for the proposition that "post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." 471 F.3d 975, 976 (9th Cir. 2006) (per curiam). But the Ninth Circuit in *Williams* went on to state that "[a]ny post-removal pleadings must be treated just as they would be in a case originally filed in federal court," *id.* at 977—in other words, an amended complaint filed post-removal "supersedes" the original complaint filed in state court. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 2010)). To that end, the Supreme Court has held that where an amended complaint filed post-removal divests a federal court of jurisdiction, the federal court must remand the case back to state court. *Id.* at 43–44. This is because "federal courts are courts of limited jurisdiction: When they do not have (or no longer have) authorization to resolve a suit, they must hand it over." *Id.* at 28. To determine whether it is currently "authoriz[ed] to resolve" this matter, the Court thus looks to the second amended complaint.

**B. Stephens lacks Article III standing.**

The Washington Supreme Court recently held that "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 592, 567 P.3d 38 (2025). But the legislature's creation of a statutory injury does not automatically confer Article III standing. *TransUnion*, 594 U.S. at 426–27. Instead, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. For this Court to have either original or removal jurisdiction, a CEMA plaintiff must have alleged that he has "suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

In *Samaduroff v. David Peyser Sportswear, Inc.*, this Court held that "the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) (quoting *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026)). While the Court acknowledges the contrary decisions cited by ButcherBox, *see* Dkt. 31 at 7–9, the facts of this case give the Court no reason to depart from its holding in *Samaduroff*.

ButcherBox argues that by claiming to have received emails with false or misleading information, Stephens has alleged an injury similar to the traditional harms of nuisance, intrusion upon seclusion, and fraud. *Id.* at 7–8. Critically, however, Stephens does not allege that any email from Babbel to a Washington consumer—including himself—was unsolicited. See Dkt. 23 ¶¶ 15–35. Nor does the complaint contain any allegation that Stephens made a purchase from Babbel in reliance on a false or misleading email subject line, or that he faces a risk of doing so

in the future. The receipt of emails, without more, is not sufficiently connected to traditional injuries like nuisance, fraud, or intrusion upon seclusion, which involve nonconsensual conduct or reliance. At this point, the most Stephens can claim is that he may detrimentally rely on these emails in the future, but he has not done so yet.

With these circumstances in mind, Stephens lacks standing to pursue either damages or injunctive relief. First, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 594 U.S. at 436. Stephens alleges no "economic loss, detrimental reliance, or any comparable injury" arising from the email he received, foreclosing his ability to seek damages for ButcherBox's alleged conduct. *Samaduroff*, 2026 WL 2675977, at *2 (quoting *Stutsman*, 2026 WL 2445129, at *4). Second, while "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," that risk must be "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Although Stephens claims to have previously received a false or misleading email from ButcherBox, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). And even assuming that the emails will continue, Stephens does not allege that they will affect his own purchasing habits in any way. *See id.* at 969–70 (explaining that threats of future harm from false advertising may include plausible allegations that a consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved"). In short, no allegations of *imminent* risk are present in Stephens's complaint. Injunctive relief is thus unavailable.

**C. The Court declines to stay this case pending the outcome of *Montes v. Penney OpCo, LLC*.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To that end, a district court has discretion to grant or deny a request for a stay. *Nken v. Holder*, 556 U.S. 418, 433 (2009). As the party requesting a stay, ButcherBox "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In determining whether to issue a stay, a court should consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1989)).

For the reasons expressed above, ButcherBox has not made a strong showing that the *Montes* case is likely to result in a decision favorable to ButcherBox on the question of Article III standing. Taken together, the remaining factors also weigh against issuing a stay in this instance. While ButcherBox claims that both parties would face harm from a stay "by devoting substantial resources to a threshold issue the Ninth Circuit is set to clarify" and facing the risk of inconsistent rulings, Dkt. 31 at 12, these speculative injuries do not rise to the standard of irreparable harm. To the extent that the public—a purported class of Washington consumers—is implicated in this case, it serves the public interest for this case to be litigated sooner rather than later. And although there is no evidence that Stephens would be "substantially injure[d]" by a stay, ButcherBox does not proffer sufficient reason to postpone the resolution of his claims. Finally, while ButcherBox suggests that the Court would benefit from the Ninth Circuit's guidance on this question, *see id.* at 5, the same is true of the hundreds of other matters pending

before the appeals court at any given time. To delay this case for an indeterminate amount of time while awaiting the outcome of an appeal in a separate matter would not be economical for the Court, for counsel, or for litigants.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The above-captioned case is REMANDED to the Pierce County Superior Court.
2. The Clerk shall mail a certified copy of this Order to the Clerk of Court for the Pierce County Superior Court.
3. The Clerk shall transmit the record herein to the Clerk of Court for the Pierce County Superior Court.
4. The Clerk shall close this case.

Dated this 9th day of October, 2026.

Tiffany M. Cartwright
United States District Judge